Frederick E. Anderson v. Commissioner.
Anderson v. Commissioner
Docket Nos. 12793, 20146.
United States Tax Court
1950 Tax Ct. Memo LEXIS 226; 9 T.C.M. (CCH) 325; T.C.M. (RIA) 50099; April 7, 1950
*226 Earl Q. Kullman, Esq., and William A. Sheehan, Esq., for the petitioner. M. L. Sears, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases, consolidated for trial, involve deficiencies in income tax, as follows: Docket No.
Year
Amount
12793
1943
$38,311.55
1944
46,736.62
20146
1945
31,588.91
The only issue for our determination is whether the respondent erred in his determination that the entire income from the F. E. Anderson Oil Company is taxable to the petitioner in 1943, 1944, and 1945. From evidence, both documentary and oral, we make the following Findings of Fact Petitioner is an individual resident of the state of Connecticut and filed his income tax returns for each of the taxable years in the district of Connecticut. In March 1935 petitioner resigned his position as employee of a nationally known oil company to engage in the manufacture and sale of lubricating oils, cutting oils and allied products under the style of F. E. Anderson Oil Co. Prior to April 17, 1935, the sole bank account maintained by the petitioner and his wife (hereinafter sometimes referred to as Marjorie *227 M. Anderson) was a joint account at the Capital National Bank & Trust Co. of Hartford. On April 17, 1935, a new bank account was opened in the name of F. E. Anderson Oil Co. by transferring $100 from the joint account of petitioner and his wife and by depositing at the same time $56.63, representing two checks from customers of the new venture. On April 17, 1935, all the money in the joint account of petitioner and his wife originated with the petitioner, except $3.28 as to which there is no explanation. Certain residential property in Windsor, Connecticut, was recorded in the name of Marjorie M. Anderson. The original cost of the property in 1925 was $7,000, subject to a first mortgage of $5,500 and a second mortgage of $1,300. The second mortgage was held by petitioner's father. Certain residential property in Higganum, Connecticut, was recorded in the name of Marjorie M. Anderson. The property was purchased in 1940 for $9,000. The purchase money was supplied by a $5,000 mortgage on the property, $3,000 from Marjorie M. Anderson's father and $1,000 from the F. E. Anderson Oil Co. The new enterprise was originally financed on a factoring basis by one of petitioner's former schoolmates *228 in New York City, one Theurkauf, associated with Marsily & Co. Under the arrangement petitioner was enabled to purchase oils at cost to Marsily & Co. by paying to them a factoring commission, varying from 5 to 7 per cent of the cost, and interest at the rate of 6 per cent per annum on the total indebtedness outstanding. Marsily & Co. was obligated to pay storage and insurance, and local delivery charges. From 1935 to September 14, 1940, F. E. Anderson Oil Co. borrowed at least $6,700 on the signature of the petitioner, and at least $1,900 on the signature of petitioner and his wife. During the same period at least $8,651.23 was borrowed by the petitioner and his wife on their own signatures. Also, during the same period petitioner borrowed at least $7,700 on his own signature. Prior to September 14, 1940, petitioner unsuccessfully attempted to sell a partnership interest in the F. E. Anderson Oil Co. to third persons. Under date of September 14, 1940, petitioner, for a recited consideration of natural love and affection, executed an instrument entitled "DEED OF GIFT" in which he purported to convey to his wife a net undivided one-half interest in his oil business, operated under *229 the style of F. E. Anderson Oil Co. Donor and donee gift tax returns were filed by petitioner and his wife on March 15, 1941, showing the value of the "gift" as $5,912.66. Under date of September 14, 1940, an instrument signed by petitioner and his wife purports to create a partnership in which each was to contribute an undivided one-half interest in the business of F. E. Anderson Oil Co. to the "partnership" and that they were to share all profits and losses equally. Petitioner was to manage the business and as compensation therefor was to receive $5,200 per annum. A certificate of registration of trade name was filed in the office of the Town Clerk, of Portland, Connecticut, in which it was represented that petitioner and his wife were the owners of and conducted the business known as F. E. Anderson Oil Co. Marjorie M. Anderson did not take any part in the business at any time, was not consulted with reference to its management, or with reference to withdrawals therefrom. On four separate occasions Marjorie M. Anderson signed the salary checks for the F. E. Anderson Oil Co. The checks were signed at the company's office on two occasions and twice they were brought to her home *230 for her signature. On each occasion petitioner was out of town. During the period September 14, 1940, to December 31, 1945, the F. E. Anderson Oil Co. borrowed at least $354,125.82; $10,000 of that amount was borrowed by the company on the joint signature of petitioner and his wife, Marjorie M. Anderson; $344,125.82 of that amount was borrowed by the company on petitioner's own signature. During the same period petitioner, on his own signature, borrowed at least $24,900. These loans ranged in size from amounts of less than $1,000 to one in an amount of $40,000. The size of the majority of the loans were between $1,000 and $10,000. They were primarily for short periods of time, usually for one to three months. The interest rate varied but was usually indicated at 3, 5, or 6 per cent. On October 15, 1945, petitioner's wife, Marjorie M. Anderson, on her own signature, borrowed $12,500 on a 90 day note. The books of the F. E. Anderson Oil Co. disclose the following drawings: 1940 *
1941
1942
1943
1944
1945
F. E. Anderson
$3,000
$5,600
$13,500
$27,700
$52,000
$33,000
Marjorie M. Anderson
3,000
5,600
13,500
27,700
52,000
33,000
*231 All withdrawals were initiated by the petitioner without consultation with Marjorie M. Anderson. The income tax returns filed by petitioner and for the alleged partnership indicate that the F. E. Anderson Oil Co. earned the following amounts in the years indicated: 1938
$ 3,191.68
1939
9,986.00
1940 (first 8 1/2 mos.)
12,972.69
1940 (last 3 1/2 mos.)
16,623.95
1941
48,609.17
1942
47,844.70
1943
91,990.55
1944
113,122.68
1945
72,866.96
The living expenses of the petitioner, his wife and family were about $12,000 to $16,000 per year, during the taxable years. Petitioner gave his wife an allowance of not more than $200 for household expense. Above these amounts, they tried to divide the household expense equally. The petitioner and his wife did not, during the taxable years, intend in good faith to carry on business as a partnership. Opinion The parties agree that the sole issue here involved is the validity of the partnership claimed between petitioner and his wife. In other words, did the respondent err in disregarding the claim of the partnership and taxing the entire income of the petitioner? Much has been written on the subject of family *232 partnerships but since the opinion in , we know that the question is: "* * * whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of distinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" This, of course, calls for examination and analysis of all of the facts in the case. We have so proceeded. Our conclusion is that the husband and wife did not in this matter, in good faith and acting with a business purpose, intend to join together in the present conduct of a partnership. We have not, in so concluding, set any objective standards but have considered the facts as to contribution of services and capital along with all of the other facts contributing to such conclusion as to good faith and intent to be partners. The record discloses *233 that the alleged partnership started with $100 from a joint account of the husband and wife and $56.63 in checks from two customers, but that the petitioner himself had contributed all of the moneys in the joint account except $3.28, as to which we have no information. There appears to be no contention that the wife contributed services to the partnership. The only thing that the record indicates in that regard is that on four occasions she signed the salary checks for the company, when petitioner was out of town. This obviously does not prove contribution of services, even if there was any such contention. The record does not indicate the setting up of any capital account on the books of the alleged partnership for the petitioner's wife. The principal contention of the petitioner, as we analyze the record, is that the wife furnished credit and that credit was a very important element in the building up of the business. We are not convinced. In the first place, the activity, energy and ability of the petitioner are indicated by the record to have contributed much more to the building up of the business than capital. Some capital was necessary but we think petitioner places too much *234 accent on it. In the next place the wife is not shown to have contributed credit in more than a minor amount. The borrowings of the company prior to September 14, 1940, were, so far as shown by the record, upon the wife's signature only to the extent of $1,900 out of $8,600, and upon the $1,900 she was co-signer with her husband. For the same period the record indicates that aside from borrowing by the company $8,651.23 was borrowed by the petitioner and wife on their signatures, while he borrowed $7,700 on his own signature. After September 14, 1940, when the alleged partnership was formed, out of about $354,000 borrowed by the company, so far the evidence shows, the wife's joint signature with her husband contributed only $10,000, up to December 31, 1945. It is clear that the wife's signature was responsible for no considerable borrowing prior to September 14, 1940, and for only a very small per cent thereafter. The income tax returns filed by the petitioner for the partnership indicate in round numbers that its earnings were about $3,100 for 1938 and about $9,900 for 1939. For 1940 they were about $12,970, up to the formation of the partnership on September 14, and about $16,600 *235 for the rest of the year, after which they increased for 1941 to about $48,000. For 1942 to 1945, inclusive, they were in round numbers, respectively, approximately $47,000, $91,000, $113,000, and $72,000. Considering the fact that the partnership was formed on September 14, 1940, we have not considered it affected by the later war year earnings in 1942 and thereafter. Nevertheless, on this record we think it clear that the income was rapidly increasing and that this was a factor in the plan as to the alleged partnership on September 14, 1940. The amounts received during the taxable years by the wife were devoted in part to the payment of household expenses, she paying, above an allowance of never more than $200 a month, about half of household expense of $12,000-$16,000 per year. In this, the situation is similar to that in , where the Court comments upon the fact that the wife drew on the income attributable on the partnership books to her for paying for the type of things she had bought for herself, home and family, before the partnership was formed, from which the Court concluded that "the result of the partnership was a mere paper *236 reallocation of income among the family members. The actualities of their relation to the income did not change." We can not believe from all of the facts before us here that a real and bona fide partnership was ever intended between the petitioner and his wife. We conclude and hold that the Commissioner is not shown to have erred in his determination that the entire income of the F. E. Anderson Oil Co. was taxable to petitioner for 1943, 1944, and 1945. Decisions will be entered under Rule 50. Footnotes
*. September 14, 1940, to December 31, 1940.↩